NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SANOFI-AVENTIS DEUTSCHLAND GMBH, AVENTIS PHARMA S.A., ABBOTT GMBH & CO. KG and ABBOTT LABORATORIES | : : : : : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : : : | **OPINION**  Civil Action No. 07-CV-5855 (DMC) |
| v. | : : | |
| GLENMARK PHARMACEUTICALS INC., USA and GLENMARK PHARMACEUTICALS LTD, | : | |
| Defendants. | | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Glenmark Pharmaceuticals Inc., USA and Glenmark Pharmaceuticals Ltd. ("Defendants") for an entry of summary judgment in Defendants favor pursuant to Fed. R. Civ. 56.  Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  After considering the submissions of all parties, and based upon the following, it is the decision of this that Defendants' motion for summary judgment is **denied.**

I.    **BACKGROUND**

On December 7, 2007, Sanofi-Aventis Deutschland GmbH, Aventis Pharma S.A., Abbott GmbH & Co. KG and Abbott Laboratories ("Plaintiffs") filed complaint against Defendants for infringement, including direct, contributory and inducement infringement, of U.S. Patent No. 5,721,244 (the "'244 patent"), titled "Combination of Angiotensin-Converting Enzyme Inhibitors

with Calcium Antagonists as well as their Use in Drugs." Plaintiffs' Complaint ("Pl. Compl."), ¶ ¶ 1, 15. The '244 patent covers a combination of trandolapril and verapamil. Pl. Compl., ¶ 15.

Filed on June 7, 1995, the '244 patent issued on February 24, 1998 to inventors Reinhard Becker, et al. [sic] Pl. Compl., ¶ 15. The patent was initially assigned to Hoechst Aktiengesellschaft who subsequently assigned ownership rights to Aventis Pharma Deutschland GmbH, renamed Sanofi-Aventis Deutschland GmbH. Pl. Compl., ¶ 16. Aventis Pharma S.A. was granted an exclusive license to manufacture, use and sell pharmaceutical products containing trandolapril and verapamil hydrochloride. Pl. Compl., ¶ 17. Aventis Pharma S.A. granted Abbott Germany an exclusive license to manufacture, use and sell pharmaceutical products containing trandolapril and verapamil hydrochloride. Pl. Compl., ¶ 18. On October 22, 1996, the Food and Drug Administration ("FDA") approved Abbott Laboratories New Drug Application ("NDA") No. 20-591. Pl. Compl., ¶ 19. Pursuant to the NDA approval, Abbott Laboratories sells drug products containing the trandolapril/verapamil hydrochloride combination in the United States under the trademark Tarka®. Pl. Compl., ¶ 19. The '244 patent is listed in FDA publication titled "Approved Drug Products with Therapeutic Equivalence Evaluation" ("Orange Book") as being applicable to Abbott Laboratories' aforementioned NDA for its Tarka® tablets. Pl. Compl., ¶ 20.

Defendants filed an Abbreviated New Drug Application ("ANDA") No. 79-135 with the FDA for approval to market a generic version of the drug Tarka®. Defendants' Answer ("D. Ans."), ¶ 1. On October 24, 2007, Defendants notified Plaintiffs by certified mail of the ANDA submission pursuant to 21 U.S.C. § 355(j) for 4 milligram trandolapril/240 mg verapamil hydrochloride extended release tablets. D. Ans., ¶ 21. On November 12, 2007, Defendants notified Plaintiffs by certified mail that it filed a "gratuitous amendment" to the pending ANDA. D. Ans., ¶ 22. In

response to Plaintiffs' claim of infringement, Defendants assert an affirmative defense of patent invalidity pursuant to 35 U.S.C. §§ 100, *et seq.*  D. Ans.,  ¶ 42. .

## II.   LEGAL STANDARD

"A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Gaston v. U.S. Postal Serv., 2009 U.S. App. LEXIS 5673 (3d Cir. Mar. 18, 2009).  However, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b).  "[T]he burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Cartrett, 477 U.S. 317, 325 (1986).  "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56©." Celotex, 477 U.S. at 323.  Pursuant to Fed. R. Civ. P. 56,

> [w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). "When the moving party has carried its burden under Rule 56©, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal citations omitted). Indeed, "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." See Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir. 1990). Rule 56(e) permits "a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Id. (quoting Lujan v. National Wildlife Fed'n., 497 U.S. 871, 889 (1990)). "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are the unsupported allegations of the pleadings." Schoch, 912 F.2d at 657.

## III.   DISCUSSION

"Where, [ ] the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc., 555 F.3d 984, 993 (Fed. Cir. 2009) (citing KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398 (2007)). Defendants contend that the claims at issue, including patent claims 1-4, 7 and 10 of the '244 patent, are invalid as obvious in light of the prior art.  Further, Defendants assert that no material facts are in dispute.  Plaintiffs dispute Defendants' representation and to the contrary, raise a number of issues of fact, concerning the relevant Graham factors, in support of precluding of an award of summary judgment at this time.  See Graham v. John Deere Co. of Kan. City, 383 U.S. 1 (1966).

1.      Claim 1

With respect to claim 1, Defendants assert that Plaintiffs admit that ACE inhibitors, calcium

antagonists, the combination of both and their respective anti-hypertensive activities were known in the art at the time of the invention. Defendants contend that the Vincent[1] and Garthoff[2] references each disclose the simultaneous treatment with an ACE inhibitor (enalapril or lisinopril) and a calcium antagonist. Defendants allege that Zanchetti[3], Brouwer[4], Mimran[5], Stornello[6], MacGregor[7] and White[8] each disclose the combination of other FDA approved ACE inhibitor (captopril) and a calcium antagonist.

However, Plaintiffs assert that as of October 1986, neither the structure of the ACE inhibitors at issue (the target enzyme in the human body) nor the mechanism of action of the ACE inhibitors was known. Additionally, at the time of the invention, Plaintiffs assert that it was unknown whether ACE inhibitors and calcium antagonists operated in independent ways to regulate blood pressure.

---

[1] M.E. Vincent, *Hemodynamic and Humoral Responses to Enalapril and Nifedipine in the Rat*, Clin. And Expert. - Theory and Practice, A6(8), 1984, at1485.

[2] U.S. Patent No. 4,703,038 (filed Oct. 7, 1985).

[3] Alberto Zanchetti, *Angiotensin Converting Enzyme Inhibition in Clinical Practice*, Journal of Cardiovascular Pharmacology, 1985, at S126; Alberto Zanchetti, *Nitrendipine and ACE Inhibitors*, Journal of Cardiovascular Pharmacology, 1988, at S80.

[4] Rene M. L. Brouwer, *Antihypertensive Treatment Using Calcium Antagonists in Combination with Captopril rather than Diuretics*, Journal of Cardiovascular Pharmacology, 1985, at S88.

[5] Albert Mimran, *Effect of Chronic Nifedipine in Patients Inadequately Controlled by a Converting Enzyme Inhibitor and a Diuretic*, Journal of Cardiovascular Pharmacology, 1985, at S92.

[6] Michele Stornello, M.D., *Hemodynamic and Humoral Interactions Between Captopril and Nifedipine*, Hypertension, An Official Journal of the American Heart Association, September-October 1993, at III-154.

[7] G.A. MacGregor, *Captorpril*: *Contrasting Effects of Adding Hydrochlorothiazide, Propranolol, or Nifedipine*, Journal of Cardiovascular Pharmacology, 1985, at S82.

[8] William B. White, M.D., *Effects of Combination Therapy with Captopril and Nifedipine in Severe or Resistant Hypertension*, Clinical Pharmacology Therapeutics, January 1986, at 43.

Moreover, Plaintiffs contend that none of the prior art reference cited by Defendants directly disclose captopril and a CCB in pharmaceutical composition as required by the claims in the '244 patent. Therefore, whether ACE inhibitors, calcium antagonists, their respective independent properties and collective properties when acting in concert raises an issue of fact precluding summary judgment.[9]

2.      Claim 4

Defendants assert that claim 4 is obvious in light of the relevant prior art references, including Garthoff, Vincent, Brouwer, Mimran, Zanchetti, Stornello, MacGrego and White.  Defendants suggest that these references disclose that the combination of ACE inhibitors and calcium antagonists is effective in the treatment of hypertension and also provide relevant dosing information. Specifically, Defendants allege that Zanchetti discloses the acceptance of combining the classes of ACE inhibitors and calcium antagonists for the treatment of hypertension.

In contrast, Plaintiffs contend that claims are not obvious in light of Garthoff or Vincent because while each reference demonstrates an acute or short-term reduction in blood pressure, neither reference discloses results pertaining to the efficacy of treating hypertension. Moreover, in contrast to Defendants representation, Plaintiffs contend that neither Garthoff nor Vincent or Zanchetti discloses a purported "class" effect of ACE inhibitors, permitting any ACE inhibitor to be substituted for another.  Further, as of October 1986, Plaintiffs contend that Defendants admit only two ACE inhibitors were approved for the treatment of hypertension, including captopril and enalapril. Plaintiffs assert that the properties of one ACE inhibitor differs dramatically from another in terms

---

[9]

Defendants assert that Claims 2-3 are invalid for the same reasons as claim 1.  Therefore, the same issues of fact exist precluding summary judgment with respect to those claims as well.

of chemical structure, the degree of reduction in blood pressure and prodrug qualities.  Therefore, issues of fact exist concerning the scope of disclosure contained in the prior art references precluding summary judgment at this time.

       3.      Claims 7 and 10

Insofar as "[c]laim 7 is directed to a method for the treatment of high blood pressure comprising administering to a host in recognized need thereof a pharmaceutical composition according to claim 1[,]" [sic] Defendants contend that claim 7 is obvious in light of the prior art, citing the references listed in the foregoing subsection.  Defendants allege that "claim 10 is directed to the composition of claim 1, but additionally requires that it further comprise a physiologically acceptable carrier."  Further, Defendants assert that "Garthoff discloses that the combinations can be converted to administrable formulations, using inert, pharmaceutically suitable excipients or solvents" and therefore, claim 10 with regard to claim 1 is invalid.  Defendants appear to contend that the purported invalidity of claim 1  translates to automatic invalidity of other claims. As explained above, Plaintiffs dispute these contentions as well as the scope and magnitude of the references used in support of these allegations.  Therefore, issues of fact exist precluding summary judgment with respect to these claims.

       4.      Underlying Factual Considerations

"Underpinning th[e] legal issue [of obviousness] are factual questions relating to the scope and content of the prior art, the differences between the prior art and the claimed invention, the level of ordinary skill in the art, and any relevant secondary considerations, such as commercial success, long-felt need, and the failure of others." Lucent Techs v. Gateway, Inc., 580 F.3d 1301, 1310 (Fed.

Cir. 2009).

a.      Level of Ordinary Skill in the Art

The level of ordinary skill in the art is a question of fact.  See Alza Corp. v. Mylan Labs, Inc., 464 F.3d 1286, 1293 (Fed. Cir. 2006); In re Epstein, 32 F.3d 1559, 1563 (Fed. Cir. 1994).  Defendants assert that a "person of ordinary skill to whom the '244 patent is directed is a pharmacologist or medical professional involved in the research and development of therapies for hypertension."  By contrast, Plaintiffs assert that the '244 patent is multi-disciplined and at a minimum, requires knowledge of chemistry in order to ascertain the scope of the claims in the '244 patent.  Plaintiffs assert that with regard to the level of ordinary skill in the art there is a clear factual dispute as to whether a person of ordinary skill in the art would have considered structural differences between quinapril and the prior art ACE inhibitors. Therefore, an issue of fact exists with respect to the required level of ordinary skill in the art precluding summary judgment.

b.      Secondary Considerations

In discussing the question of obviousness, the Supreme Court indicated that the Graham case "set forth a broad inquiry and invited courts, where appropriate, to look at any secondary considerations that would prove instructive. Proctor & Gamble Co. v. Teva Pharms., 566 F.3d 989, 994 (Fed. Cir. 2009) (citing Graham v. John Deere Co. of Kan. City, 383 U.S. 1 (1966)). "Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record." Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1539 (Fed. Cir. 1983). By way of example, "if a patent challenger makes a prima facie showing of obviousness, the owner may rebut based on "unexpected results" by demonstrating 'that the claimed invention exhibits some superior property

or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected.'" Proctor, 566 F.3d at 994 (citing In re Soni, 54 F.3d 746, 750 (Fed. Cir. 1995)).

Defendants assert that summary judgment is warranted because beyond patent invalidity, evidence of secondary considerations in support of a claim of non-obviousness is absent. Specifically, Defendants assert that the antihypertensive properties of the combination of the ACE inhibitor and calcium antagonist were expected.  Alleging that the properties of a combination cannot amount to an unexpected result, citing Merck & Co. v. Biocraft Labs, Inc., 874 F.2d 804, 808 (Fed. Cir.1989), Defendants underscore the Tarka® label stating, "the antihypertensive effect of the combination is approximately additive to the individual components."  In contrast, Plaintiffs assert that the duration and efficacy of Tarka® is superior to the closest prior art combination.  Additionally, Plaintiffs cite to a number of purportedly unexpected results, including, but not limited to,  synergistic improvement in blood vessel structure and reduction in the incidence of cardiac events.

Defendants assert that the alleged commercial success of Tarka® is irrelevant because Tarka® contains a patented ingredient, trandolapril, U.S. Patent No. 4,933, 361 (the "'361 patent"), and that patent is alleged to cover trandopril and Tarka® until it expires.   Plaintiffs respond that the '361 patent expired on June 12, 2007 and following that date, gross sales can only be attributed to the '244 patent.   Plaintiffs further allege that an increase in the product's sales as well as the alleged commercial failure of the closest prior art demonstrates the commercial success of Tarka®. Therefore, issues of fact arise concerning the alleged secondary considerations and effectively, precluding summary judgment.

     5.     Disputed/Undisputed Facts

In support of their motion for summary judgment, Defendants submitted a statement of

undisputed facts.   The Court will not recite the details of each paragraph.   However, Plaintiffs'
submission in response directly disputes a multitude of the paragraphs provided in Defendants'
statement of undisputed facts.   Further, Plaintiffs submitted a supplemental statement of disputed
facts in support of their opposition to the instant motion for summary judgment.   Undeniably, issues
of fact exist precluding summary judgment.

**IV.**   <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for summary judgment is **denied**.   An
appropriate order accompanies this opinion.


           S/ Dennis M. Cavanaugh
          Dennis M. Cavanaugh, U.S.D.J.

Dated:        February  19 ,  2010
Original:    Clerk
cc:          All Counsel of Record
             Hon. Mark Falk, U.S.M.J.
             File