NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANOFI-AVENTIS DEUTSCHLAND GMBH, AVENTIS PHARMA S.A., ABBOTT GMBH & CO. KG and ABBOTT LABORATORIES<br><br>Plaintiff,<br><br>v.<br><br>GLENMARK PHARMACEUTICALS INC., USA and GLENMARK PHARMACEUTICALS LTD,<br><br>Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 07-CV-5855 (DMC-JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Plaintiffs sanofi-aventis Deutschland GmbH and Aventis Pharm S.A. ("sanofi-aventis") and Abbott GmbH & Co. KG and Abbott Laboratories ("Abbott") (collectively, "Plaintiffs") to impose sanctions against Defendants Glenmark Pharmaceuticals, Inc., USA and Glenmark Pharmaceuticals, Ltd. (collectively, "Defendants") for spoilation of evidence. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of all parties, it is the decision of this Court for the reasons herein expressed that Plaintiffs' motion for sanctions for spoilation of evidence is **denied in part** and **granted in part**.

I. **BACKGROUND**

The '244 patent, titled "Combination of Angiotensin-Converting Enzyme Inhibitors with

Calcium Antagonists as well as their Use in Drugs[,]" issued on February 24, 1998, with a filing date of June 7, 1995 and a foreign application priority date of October 2, 1986. The '244 patent discloses and claims a "pharmaceutical composition" used to treat hypertension. The pharmaceutical composition contains an angiotensin-converting enzyme inhibitor ("ACE inhibitor") having certain bicyclic or tricyclic ring systems and a calcium antagonist (also known as a calcium channel blocker or "CCB") in "amounts effective for treating hypertension."

On July 24, 2007, Glenmark filed an Abbreviated New Drug Application ("ANDA") No. 79-135 with the FDA for approval to market a generic version of the drug Tarka®. On October 24, 2007, Glenmark notified Plaintiffs that it had made a "Paragraph IV" certification asserting that the '244 patent is invalid. On December 7, 2007, consistent with the provisions of the Hatch-Waxman Act, Plaintiffs initiated suit before this Court against Defendants for patent infringement.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 37 vests a district court with inherent authority to impose sanctions where a party fails to make disclosures or cooperate in discovery. Fed. R. Civ. P. 37.

## III. DISCUSSION

Plaintiffs contend that "Glenmark decided in 2005 to file a Paragraph IV certification and challenge the '244 patent[,]" rather than a Paragraph III certification which would permit Defendants to launch a generic version of Tarka® upon the expiration of the '244 patent in 2015. In support of this contention, Plaintiffs cite to the deposition testimony of Vijay Soni ("Dr. Soni"). In this regard, Plaintiffs question Defendants production of only three emails over the course of approximately ten months in 2005. Further, Plaintiffs argue that, in asserting a work product privilege with respect to documents dated February 23, 2006 through June 26, 2007, Defendants anticipated the present

litigation at least as early as 2006. Finally, Plaintiffs contend that Defendants not only failed to institute a "litigation hold"[1] at a time when litigation was foreseeable, but also engaged in a systematic document destruction policy, "whereby all emails and related electronic documents on Glenmark's server are retained for only for one month." "[U]nless they were specifically saved on individual computers, [Plaintiffs allege that] the emails and related electronic documents would be overwritten and would no longer be available."

Additionally, Plaintiffs cite to the three emails produced during discovery for the year of 2005 as indicative of this alleged systematic document destruction and spoilation of evidence. With respect to a September 23, 2005 email, from Dr. Soni to Vijay Nasare ("Mr. Nasare"), asserting a request for a file history for the '244 patent, Plaintiffs contend that neither a responsive email nor corresponding file history was ever produced during discovery. With respect to an April 12, 2005 email, from Arra Srinivas ("Dr. Srinivas") to Dr. Soni, inviting Dr. Soni to "revert with comments[,]" Plaintiffs allege that no responsive email was ever produced during discovery. Relatedly, Plaintiffs contend that although Dr. Soni testified that, as a consequence of the foregoing email, he communicated with his team concerning the development of a generic Tarka®, no email or other written correspondence was produced demonstrating such a communication. Lastly, with respect to an email dated December 26, 2005, in response to an inquiry from Mr. Nasare requesting information relevant to Abbott's platform patents, Dr. Srinivas indicated that all relevant information is in the attachment, "Formula for IPM - Verapamil.doc." However, Plaintiffs contend that

---

[1] Plaintiffs contend that although a "litigation hold" was alleged to have been instituted by Defendants on July 24, 2007, a "litigation hold" did not actually arise until after this suit began. On July 14, 2008, Dr. Soni extended an email requesting employees to collect pertinent documents from March 2005 through December 7, 2007.

3

Defendants failed to produce this document during the course of discovery because the document no longer exists.

Glenmark concedes that the decision to make a generic version of Tarka® arose during an in person meeting, between Dr. Soni, Terry Coughlin, the company's president and Paul Dutra, Glenmark's marketing director at the time, in March 2005. According to Defendants, this is further illustrated by the laboratory notebooks. However, Defendants argue that the duty to impose a "litigation hold" did not arise until after the decision to file a Paragraph IV certification in mid-2007.

With respect to Plaintiffs' first argument, Defendants suggest that although Dr. Soni testified that he eventually received the file history "at some time[,]" Dr. Soni never testified that Mr. Nasare was the individual who procured the file history. Moreover, Defendants underscore the fact that Dr. Soni testified that he did not discuss the '244 patent with Mr. Nasare. Therefore, Defendants argue that there is no support for Plaintiffs' allegation that Defendants have failed to produce a responsive email. With respect to the April 12, 2005 email, Defendants contend that Dr. Soni's testimony clearly indicates that he did not respond to Dr. Srinivas. With respect to the alleged failure to produce an attachment to the December 26, 2005 email, Defendants argue that the omitted attachment concerns the production and manufacture of verapamil, a compound that is not at issue in this case and therefore, not relevant. Nonetheless, Defendants have agreed to produce this document in an effort to eliminate any purported spoilation. With respect to allegations concerning routine destruction of emails, Defendants assert that all of Defendants' witnesses testified that "they did not destroy or delete any document or email relevant to any issue in this case." Further, Defendants appear to contend that despite any purported deletion by Glenmark's server, each "individual employee involved in the project maintained emails addressed to or from him or her."

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably for[e]seeable litigation." MOSAID Techs., Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 335 (D.N.J. 2004). "Evidence of spoliation may give rise to sanctions." Id. "[D]eleting files can constitute spoilation of evidence." Arteria Prop. Pty Ltd. v. Universal Funding V.T.O., 2008 U.S. Dist. LEXIS 77199, *14 (D.N.J. Oct. 1, 2008).

"While a litigant is under no duty to keep or retain every document in its possession, even in advance of litigation, it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." MOSAID, 348 F. Supp. 2d at 336 (citing Scott, 196 F.R.D. at 249). "If the duty to preserve evidence 'has not been triggered at the time the evidence was destroyed, then there can be no spoliation.'" Antoine v. KPMG Corp., 2010 U.S. Dist. LEXIS 1907, *29 (D.N.J. Jan. 6, 2010) (quoting Kounelis v. Sherrer, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (An independent duty to preserve relevant evidence arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded.)). "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Major Tours, Inc. v. Colorel, 2009 U.S. Dist. LEXIS 68128, *9 (D.N.J. Aug. 4, 2009)(quoting Zubulake v.UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y.Oct. 23, 2003)); see Arteria, 2008 U.S. Dist. LEXIS 77199 at *14. "However, a party's discovery obligations do not end with the implementation of a litigation hold." Id. (citing Zubulake, 229 F.R.D. at 432). "Counsel must oversee compliance with

5

the litigation hold, monitoring the party's efforts to retain and produce relevant documents." Id.

"Potential sanctions for spoliation include: dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs. MOSAID, 348 F. Supp. at 335. "This Court has the authority to impose spoliation sanctions pursuant to the Federal Rules of Civil Procedure and this Court's inherent authority." Id. (citing Scott v. IBM Corp., 196 F.R.D. 233, 247-48 (D.N.J. 2000)).

"Sanctions are appropriate when there is evidence that a party's spoliation of evidence threatens the integrity of this Court." Id. "Spoliation sanctions serve a remedial function by leveling the playing field or restoring the prejudiced party to the position it would have been without spoliation." Id. "They also serve a punitive function, by punishing the spoliator for its actions, and a deterrent function, by sending a clear message to other potential litigants that this type of behavior will not be tolerated and will be dealt with appropriately if need be." Id.

"Dismissal or suppression of evidence are the two most drastic sanctions because they strike at the core of the underlying lawsuit." Id. "As such, they should only be imposed in the most extraordinary of circumstances." Id. "Three key considerations that dictate whether such sanctions are warranted are: '(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.'" Id. (quoting Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994)).

"A far lesser sanction is the spoliation inference." Id. "The spoliation inference is an adverse inference that permits a jury to infer that 'destroyed evidence might or would have been unfavorable

to the position of the offending party.'" Id. at 336 (citing Scott, 196 F.R.D. at 248). "This inference is predicated upon the common sense observation that when a party destroys evidence that is relevant to a claim or defense in a case, the party did so out of the well-founded fear that the contents would harm him." Id. (citing Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1994)). "In order for the spoliation inference to apply, four essential factors must be satisfied. First, 'it is essential that the evidence in question be within the party's control.'" Id. (citing Brewer, 72 F.3d at 334 (internal citation omitted)). Second, "it must appear that there has been actual suppression or withholding of the evidence." Id. "Third, the evidence destroyed or withheld was relevant to claims or defenses." Id. (citing Scott, 96 F.R.D. at 248). "And fourth, it was reasonably foreseeable that the evidence would later be discoverable." Id. However, "[t]he test for an adverse inference sanction-- a finding of evidence destruction and bad faith by the destructive party–[i]s inapplicable where the destruction of evidence was harmless because it had already been produced." Multiservice Joint Venture, LLC v. United States, 2010 U.S. App. LEXIS 11243, *8 (Fed. Cir. May 6, 2010) (citing Eaton Corp. v. Appliance Valves Corp., 790 F.2d 874 (Fed. Cir. 1986)).

A. Specific Emails

Given that Defendants consent to production of the December 26, 2005 email's omitted attachment for purposes of inspection, no viable basis for spoliation exists on this ground. Further, although the April 12, 2005 email invites Dr. Soni to "revert with comments," Dr. Soni indicates explicitly that upon receipt of this email, Dr. Soni did not engage in any conversation with Dr. Srinivas about the memo. Further, in response to the inquiry "what did you do when you got the memo?, Dr. Soni testified that, upon receipt of the memo, "I did nothing. I just-there was nothing which I need to look into that." The follow-up inquiry reads, "[w]hy was there nothing in the memo

7

that you needed to look into?" Dr. Soni responded, "[b]ecause they are documenting the formulation. I had no input on the formulation side." Therefore, despite the invitation to respond, it appears to the Court that Dr. Soni neither responded to the email nor felt any immediate need to do so given that he testified he had no input on the formulation side. Additionally, Plaintiffs' contention that any subsequent communication between Dr. Soni and his team automatically occurred via email or was undeniably memorialized in some written communication is too speculative to support a claim for spoilation. Indeed, according to Dr. Soni, the decision to generate a generic version of Tarka® was the subject of an oral rather than written communication. Therefore, the allegations with respect to the April 12, 2005 email fail to present a viable claim for spoilation.

The September 25, 2005 email from Dr. Soni to Mr. Nasare memorializes a request for the file history of the '244 patent, indicating "Do we have FH for" the '244 patent . . . If so could you pl send this to me." Dr. Soni testified that at some point he received the file history for the '244 patent. However, the manner in which the file history is ultimately procured is unclear. A delivery of the file history appears to constitute a sufficient response for purposes of the inquiry addressed in that email. Therefore, the absence of a written response to this email is less than surprising. At the same time, in the absence of an assertion of privilege or immunity, the failure to produce the actual file history discussed in the September 25, 2005 email and purportedly received by Dr. Soni may be suggestive of spoilation. However, as acknowledged by Plaintiffs in their reply papers on this matter, the missing file history is really just the prosecution history for the '244 patent. Undoubtedly, as owners of the '244 patent, Plaintiffs have access to the prosecution history for the '244 patent. To the extent that the file history for the '244 patent is indeed nothing more than the

prosecution history of the patent, as recognized by Plaintiffs, any alleged error arising as a consequence of the failure to produce the prosecution history is harmless. Therefore, the Court declines to proceed with the adverse inference inquiry on these grounds.

On this ground, the motion is **denied.**

B.   General Practice

The exact moment of when the duty to impose a "litigation hold" is vague. Contrary to Plaintiffs' argument, the decision to create a generic version of Tarka® does not automatically give rise to the duty to impose a "litigation hold." At the same time, Defendants' argument that the duty to impose a "litigation hold" did not arise until mid-2007 upon the filing of the Paragraph IV certification is also misguided, especially where Defendants' claim privilege with respect to documents from 2006. Plaintiffs underscore the fact that Defendants' privileged documents log claims work product immunity with respect to four documents, dating from February 23, 2006 through June 26, 2007. "A party claiming work-product immunity bears the burden of showing that the materials in question 'were prepared in the course of preparation for possible litigation.'" Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d Cir. 2000) (quoting Haines v. Liggett Group, Inc., 975 F.2d 81, 94 (1992)). Therefore, Defendants duty to impose a litigation hold and to institute legal monitoring for purposes of compliance arose no later than February 23, 2006.

Given that Defendants practice systematic document destruction and the fact that Defendants claim that a duty to impose a litigation hold did not arise until mid-2007, an adverse inference may be drawn with respect to documents systematically destroyed between February 23, 2006 and the mid-2007date alleged by Defendants. In accordance with the adverse inference analysis, the

9

destroyed documents in question were within the control and possession of Defendants, were relevant to the claims and defenses in the present litigation and were the subject of reasonably foreseeable litigation as of February 23, 2006.

On this ground, the motion is **granted**.[2]

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to impose sanctions for spoilation of evidence is **denied in part** and **granted in part**.

Dated:   July __/__, 2010
cc:   All Counsel of Record
       Hon. J. A. Dickson, U.S.M.J.
       File

Dennis M. Cavanaugh, U.S.D.J.

---

[2] By way of limitation, the time frame for drawing this adverse inference is restricted to the period between February 23, 2006, the date on which Defendants claim privilege, and mid-2007 the time when Defendants claim that the duty to impose a litigation hold arose.